# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIM. NO  09-00112** |
| **VERSUS** | |
| | **JUDGE ROBERT G. JAMES** |
| **J. JEFFREY PRUETT,** | |
| **LOUISIANA LAND & WATER COMPANY,** | **MAG. JUDGE KAREN L. HAYES** |
| **LWC MANAGEMENT COMPANY, INC.** | |

## RULING

Pending before the Court is the Government's Motion in Limine to Preclude Proposed Expert Testimony ("Motion in Limine") [Doc. No. 68] filed on January 10, 2011.  In its motion, the Government states that it was notified by Defendants Jeffrey Pruett ("Pruett"), Louisiana Land & Water Company ("LLWC"), and LWC Management Company, Inc. ("LWC") on December 17, 2010, that they intend to call as experts, Charles R. Dutill ("Dutill") and Gerald C. Hartman ("Hartman").  The Government moves the Court to require Defendants to proffer Dutill's and Hartman's testimony outside the presence of the jury and then to exclude any testimony from them under Federal Rules of Evidence 704, 401, 402, and 403.

On the first day of trial, January 11, 2011, Defendants filed a memorandum in opposition [Doc. No. 69] to the Government's Motion in Limine.

For the following reasons, the Motion in Limine is GRANTED IN PART and DENIED IN PART.

## ALLEGED FACTS AND STATUTORY BACKGROUND

Pruett is the President and Chief Executive Officer of LLWC and principal officer of

LWC, both of which are Louisiana corporations headquartered in West Monroe.  During the time period covered by the Indictment, Defendants operated over thirty public water supply and wastewater facilities in the Western District of Louisiana.  Defendants' wastewater facilities provided residential wastewater services for a monthly fee to the Bayou Galion Subdivision in Morehouse Parish and Charmingdale Estates, Daywood and Donovan Woods, Fleetwood Park, Love Estates, and Pine Bayou Subdivisions in Ouachita Parish, among others.

Wastewater treatment facilities are subject to federal regulation under the Federal Water Pollution Control Act or Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq.*  The purpose of the CWA "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The CWA prohibits all discharges of pollutants into the waters of the United States, except in accordance with a permit.  33 U.S.C. §§ 1311(a) and 1319(c)(2)(A) .

The CWA also creates a joint federal and state permitting program for those who discharge pollutants into the waters of the United States.  Under the CWA, the United States Environmental Protection Agency ("EPA") may either issue permits itself or grant authority to state environmental agencies to issue permits required by federal law before someone may discharge pollutants into waters of the United States.  The EPA has granted authority to the State of Louisiana, through the Louisiana Department of Environmental Quality ("LDEQ") to issue National Pollution Discharge Elimination Systems ("NPDES")  permits.  Pursuant to this authority, the State of Louisiana may issue Louisiana Pollution Discharge Elimination Systems ("LPDES") permits to operators of wastewater facilities located within its borders.

The State issued Defendants LPDES permits, which have a number of provisions relevant

2

to the charges in the Indictment.  The permits required that discharges be limited and monitored, including daily and monthly measurements of the discharge as well as various discharge sampling requirements.   Defendants had to report the monitoring results periodically to the LDEQ on certified and signed documents called Discharge Monitoring Reports ("DMRs"). Defendants were authorized to discharge only those pollutants that were identified in their permits and only from point sources that were identified and described in their permits.  The permits also had discharge limits for various pollutants.

Under the permits, Defendants also had the duty to ensure proper operation and maintenance and to provide an adequate operating staff qualified to carry out operation, maintenance, and other functions necessary to ensure compliance with the conditions of the permits.

Finally, LDEQ and EPA officials and representatives had the authority to inspect Defendants' facilities and records.

In the 14-count Indictment, Defendants are accused of knowingly violating a permit condition by failing to provide monitoring records required by State and Federal law (Counts 1, 4, 6, 9, 10, and 13); knowingly violating a permit condition by failing to provide proper operation and maintenance to their facilities (Counts 3 and 12); knowingly discharging pollutants in excess of effluent limitations (Counts 2, 5, 7, 11, and 14); and knowingly violating a condition of the permit for Fleetwood Park Subdivision by discharging raw sewage (Count 8).  Thus, at trial, the Government must prove with regard to each count of the Indictment that Defendants committed knowing violations of the CWA.

Defendants intend to present the testimony of Dutill and Hartman in defense.  Dutill is an

environmental engineer and will testify regarding all counts in the Indictment.   Hartman has performed a financial analysis of Defendants' systems and completed a 2008 rate base analysis. Hartman will testify as to the improvements made at the facilities listed in the Indictment.  His testimony is based on work orders he reviewed and his personal inspection of the facilities.

## LAW AND ANALYSIS

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.[1]  The district court's role in applying Rule 702 is that of a gatekeeper.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  In considering whether the proffered testimony should be admitted, the court first considers whether the witness is qualified as an expert by knowledge, skill, experience, training, or education.  *See Moore v. Ashland Chemical, Inc.*, 126 F.3d 679, 684 (5th Cir. 1997).   The court then determines whether the proffered testimony will assist the trier of fact in understanding the evidence or determining a factual issue in dispute (*i.e.*, the relevancy test).  *See id*.; *see also* FED. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").  Rule 702 also "imposes a special obligation on a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)

---

[1]Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

(quoting *Daubert*, 509 U.S. at 589); *see also United States v. Rubio*, 321 F.3d 517, 525 (5th Cir.

2003).

Even if an expert's testimony is otherwise admissible under Rule 702, "No expert witness

testifying with respect to the mental state or condition of a defendant in a criminal case may state

an opinion or inference as to whether the defendant did or did not have the mental state or

condition constituting an element of the crime charged or of a defense thereto.  Such ultimate

issues are matters for the trier of fact alone."  FED. R. EVID. 704.

Finally, while relevant evidence is generally admissible, *see* FED. R. EVID. 402, even

relevant evidence "may be excluded if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, waste of time, or needless presentation of cumulative evidence."  FED. R. EVID. 403.

### A.      Dutill

The Government does not contest Dutill's fitness as an expert or the reliability of his

methods under Rule 702.  The Government also concedes that Dutill may testify, subject to the

appropriate foundation and limitations, that discharges are not necessarily evidence of improper

maintenance and operation.

However, the Government contests the remainder of Dutill's testimony as irrelevant

under Rule 401, inadmissible ultimate issue opinion under Rule 704, and/or otherwise

inadmissible under the concerns identified under Rule 403.  Dutill's testimony, the counts to

which it relates, and the general basis of the Government's objections are set forth as follows:

| TESTIMONY | RELEVANT COUNTS | OBJECTION |
|---|---|---|
| A facility cannot prevent all unauthorized discharges. | Counts 3, 8, 12 | Irrelevant to whether discharge in the Indictment or 404(b) systems were preventable (i.e., whether Defendants acted knowingly). |
| It is not unusual for discharge events to occur. | Counts 3, 8, 12 | Irrelevant to whether discharge in the Indictment or 404(b) systems were preventable (i.e., whether Defendants acted knowingly). |
| Discharge events must be viewed viewed in the factual context. | Counts 3, 8, 12 | Vague and ambiguous; more detailed proffer sought. |
| A discharge event is not necessarily indicative of improper maintenance. | Counts 3, 8, 12 | No objection, assuming the proper foundation is laid. |
| The effluent violations are not unusual. | Counts 2, 5, 7, 11, and 14 | Comparative analysis is irrelevant to whether Defendants violated their unambiguous permit parameters. |
| Defendants have attempted to to comply with the permit limitations. | Counts 2, 5, 7, 11, and 14 | Impermissible opinion testimony under Rule 704(b). |
| Defendants' facilities have a higher than average level of performance. | Counts 2, 5, 7, 11, and 14 | Comparative analysis is irrelevant to whether Defendants violated their unambiguous [permit] parameters. |
| Permit effluent limitations are more difficult for small wastewater facilities to meet. | Counts 2, 5, 7, 11, and 14 | Irrelevant because the "onerous nature of the Permits is no legal excuse . . . for failure to comply."[2]  Comparative analysis is irrelevant. |
| Can explain the monitoring records and whether there is evidence that records were timely prepared and maintained. | Counts 1, 4, 6, 9, 10, and 13 | Irrelevant excuses for not having the records at inspection[3] and irrelevant that they were later provided. |
| No harm caused by the that violations. | All counts | Irrelevant because harm is not an element of the Government's case. |

---

[2][Doc. No. 68, p. 5].

[3]The Government contends that Defendants cannot rely on their previous justifications that the records had been provided to an attorney in the civil and administrative proceedings or Defendants were too busy serving residents. [Doc. No. 68, p. 5].

With regard to Counts 3, 8, and 12, the Court agrees with the Defendants that Dutill's testimony about discharge events from wastewater systems may aid the jury in determining whether Defendants committed knowing and willful violations of the CWA.  Thus, Dutill may properly testify about how the systems work, why (in his opinion) it is impossible to prevent all unauthorized discharges, that discharges are not unusual, that a discharge incident is not necessarily indicative of a failure to maintain the system, and that each discharge incident must be viewed in terms of the facts and circumstances of that incident.  However, Dutill may not offer an opinion whether Defendants knowingly failed to provide proper operation or maintenance or whether they knowingly discharged sewage at Fleetwood Park subdivision because such testimony would give an opinion as to whether Defendants had the mental state required for the crimes.

Next, with regard to Counts 2, 5, 7, 11, and 14, the Court also agrees with Defendants that Dutill's testimony about effluent limitations may also aid the jury in determining whether Defendants committed knowing and willful violations of the CWA.  The Court finds that Dutill may properly testify that it is not unusual for a system to exceed the effluent limitations of its permit, to the average level of performance for wastewater systems, and why it may be more difficult for small systems to achieve compliance.  However, the Court agrees with the Government that Dutill is barred by Rule 704(b) from testifying that Defendants have attempted to comply with the limitations and is also barred from testifying that his analysis shows or that it is his opinion that Defendants did not knowingly violate the effluent limitations of their permits.

With regard to Counts 1, 4, 6, 9, 10, and 13, the Court finds that Dutill's general testimony about monitoring records and how they are prepared and maintained may also aid the

jury in determining whether Defendants committed knowing and willful violations of the CWA. However, Defendants are accused of not only knowingly failing to comply with their permits, but knowingly failing to provide the records to the State Director or his authorized representative. Therefore, the Court finds that Dutill's proposed testimony about Defendants' timely preparation and monitoring is irrelevant to the inquiry as to whether Defendants' failed to provide the records. Additionally, the Court agrees with the Government that Dutill should not be permitted to testify about the alleged factual justifications that Defendants have given for their failure to provide the records. These alleged justifications, if relevant at all, are not the sort of expert testimony which may assist the jury. Finally, as with the other areas addressed, Dutill is barred by Rule 704(b) from testifying that his analysis shows or that it is his opinion that Defendants did not knowingly violate the permits by failing to provide the monitoring records.

Finally, to the extent that Dutill would testify that no harm resulted from the violations, the Court agrees with the Government that harm is not an element of its case. If, however, the Government presents evidence that these allegations resulted in a health or safety risk to these subdivisions (as opposed to evidence that the violations always pose such a risk), then Defendants would be permitted to rebut that evidence through Dutill's testimony. The Court will reserve ruling on this portion of the Motion in Limine until the close of the Government's case.

**B.     Hartman**

The Government also does not contest Hartman's qualifications as an expert or his methods under Rule 702. However, the Government argues that Hartman's testimony about rate base analysis "is not germane to any of the issues that will be before the jury at trial." [Doc. No.

68, p. 6 (citing *United States v. Protex*, 874 F.2d 740, 746 (10th Cir. 1989) (subsequent remedial action does not abrogate criminal liability under the Resource Conservation and Recovery Act)]. The Government also questions the reliability of the underlying documentation for Hartman's analysis when his report was produced in 2008, the same year that this Court sanctioned Pruett civilly in *Louisiana Environmental Action Network (LEAN) v. LWC Management Co.*, Civ. A. No. 07-0595, for failing to provide invoices, work orders, and other documentation of capital improvements.

Defendants respond that Hartman will testify about improvements made at the facilities based both on the documentation and his own personal inspection of the facilities.  Defendants contend that this testimony is relevant "to issues related to permit compliance because a showing that defendants have made substantial efforts to upgrade and improve the wastewater facilities named in the [I]ndictment weighs against a finding that [they] knowingly violated the applicable provision of the CWA." [Doc. No. 69, p. 4].

The Court disagrees with Defendants' analysis.  Defendants are charged with committing criminal violations of the CWA between November 2004 and September 2008.  Thus, Hartman would testify about improvements Defendants made to their facilities well after they allegedly committed (and continued to commit) CWA violations.  The fact that they made improvements to their facilities subsequent to their alleged crimes does not tend to make it more or less probable that they knowingly committed the violations initially.  Accordingly, the Court finds that Hartman's testimony is irrelevant.  The Government's Motion in Limine with regard to this witness is GRANTED, and Hartman will not be permitted to testify.

9

**III.     CONCLUSION**

For the foregoing reasons, the Government's Motion in Limine [Doc. No. 68] is

GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED IN PART and

DENIED IN PART as to Defendant's expert, Dutill.  Dutill will be permitted to testify at trial,

but his testimony will be limited by the Court's Ruling as set forth above.  The motion is

GRANTED as to Defendant's expert, Hartman, and his testimony is excluded from trial.

MONROE, LOUISIANA, this 11th day of January, 2011.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE