RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___/__/_4/__/_11_____

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIM. NO  09-00112** |
| **VERSUS** | |
| | **JUDGE ROBERT G. JAMES** |
| **J. JEFFREY PRUETT,** | |
| **LOUISIANA LAND & WATER COMPANY,** | **MAG. JUDGE KAREN L. HAYES** |
| **LWC MANAGEMENT COMPANY, INC.** | |

**RULING**

On January 12, 2011, the Court issued a ruling on part on the"Motion in Limine to

Determine Admissibility of Uncharged Conduct Evidence" ("Motion in Limine")  [Doc. No. 55]

filed by Defendants Jeffrey Pruett ("Pruett"), Louisiana Land & Water Company ("LLWC"),

LWC Management Company, Inc. ("LWC").  In that Ruling, the Court reserved ruling whether

the Government could introduce evidence of 41 instances of Defendants' uncharged alleged

CWA violations arising from wastewater services provided between 2005 and 2008 at

subdivisions and districts not named in the Indictment, pursuant to Fed. R. Evid. 404(b).  The

Court found in its January 12, 2011 Ruling that evidence relating to Defendants' alleged CWA

violations at their other wastewater facilities is relevant to their intent, their knowledge, and their

lack of mistake or accident.  However, the Court reserved ruling to determine if the relevance

was substantially outweighed by the other considerations addressed by Rule 403, particularly

prejudice to Defendants, cumulation of evidence, and confusion to the jury.

After having heard opening arguments and testimony, the Court finds that, after weighing

the Rule 403 concerns against the relevance of these other instances, Defendants' Motion in

Limine is GRANTED IN PART and DENIED IN PART, subject to reconsideration based on the

additional evidence and testimony presented at trial.

**A.    Evidence that Defendants violated a permit condition by failing to provide
monitoring information, including monitoring results, to State Director or his
representative (Counts 1, 4, 6, 9, 10, and 13).**

In the fourth chart presented to the Court, the Government identified twenty instances

where Defendants failed to provide monitoring results to inspectors.  During cross-examination,

it has been apparent to the Court that Defendants contend that they could not provide the

monitoring records because they had been produced in civil litigation with the Louisiana

Environmental Action Network ("LEAN").  Therefore, the Court finds that the Government may

introduce evidence of other instances identified on the fourth chart where Defendants failed to

provide monitoring information, including monitoring results, to inspectors, and Defendants did

NOT give the LEAN lawsuit as a reason for their failure to produce those records.  The Court

finds that these records are relevant, and their relevance is not substantially outweighed by

prejudice to Defendants or the other considerations of Rule 403.

**B.    Evidence that Defendants violated a permit condition at Charmingdale
Subdivision by failing to properly operate and maintain the facility, causing
wastewater to be discharged on the ground and elsewhere without proper
tertiary treatment (Count 3).**

The Government has also identified eight instances where Defendants had tertiary

treatment issues at other subdivisions and districts.  In Exhibit 18, the November 7, 2007 EPA

inspection report for Charmingdale states that it uses an oxidation pond and that chlorine tablets

were inside the chlorinator box.  However, the inspector found that "[t]he outfall box structure

receiving the chlorinated effluent from the pond is leaking.  Large cracks allow the effluent to

discharge through the concrete walls onto the ground beneath the box structure.  Subsidence of the box structure and the discharge pipe from the pond is of concern."  [Exhibit 18].

It is the Court's understanding that the wastewater flowing out of the oxidation pond must remain in the box structure for a period of time before it is considered to have received proper tertiary treatment.  Accordingly, the Court finds that evidence that Defendants did not use proper chlorination or that the wastewater did not otherwise receive proper tertiary treatment at other subdivisions and districts is relevant to the charges against Defendants.  The Court still has concerns, however, about the cumulation of evidence and the confusion to the jury by presenting unnecessary evidence of other instances.  Therefore, the Court will allow the Government to present one instance where Defendants did not use chlorination: either the February 13, 2006 instance at Hunter Heights, the June 13, 2005 instance at Millhaven, or the June 14, 2005 instance at Woodland Acres #2.  Additionally, the Court will allow the Government to present one instance of problems in the contact chamber at other subdivisions or districts: either the August 6, 2008 instance at Cooper Lake/Lakeview, the August 5, 2008 instance at Spruce Meadow, or the August 5, 2008 instance at Valley Hill.  The remainder of the instances will not be presented into evidence.

> **C.** **Evidence that Defendants violated a permit condition at Fleetwood Park Subdivision by discharging raw sewage from a manhole located adjacent to the lift station (Count 8).**

The Government provided two charts of other instances it contends are relevant and admissible under Rule 404(b) with regard to Count 8, the discharge of raw sewage from a manhole adjacent to the lift station at Fleetwood Park Subdivision.

With regard to the first chart on manhole issues, the Court finds that these instances

3

appear very similar, if not the same, as the conduct charged in Count 8. Therefore, the relevance of these instances is high, and the danger of undue prejudice is low. Therefore, the Court will allow the Government to introduce evidence of the May 2005 through March 2006 discharge at Donovan Woods and Daywood Subdivision, the August 24, 2005 discharge at Hillside Subdivision, and the August 8, 2008 discharge at Hillside subdivision.

However, with regard to the fifth chart on unpermitted discharge issues, the Court finds that these instances, while generally relevant, are not of the same level of relevance as the instances identified in the first chart. Given the Court's decision to allow the other three instances, the Court finds, at this time, that the six instances identified on the fifth chart are unnecessarily cumulative and would only serve to confuse the jury. Therefore, these six instances are excluded from evidence.

> **D.    Evidence that Defendants violated the permit for Pine Bayou by failing to properly operate and maintain the facility, resulting in the unauthorized discharge of sludge (Count 12).**

Finally, the Government provided two charts of other instances it contends are relevant and admissible under Rule 404(b) with regard to Count 12, the unauthorized discharge of sludge at Pine Bayou because of Defendants' alleged failure to operate and maintain that facility. Exhibit 102, the November 7, 2007 inspection report for Pine Bayou states as follows:

> 3.)    The concrete structure of the [Aeration Base] AB is crumbling. The AB appeared to be overloaded. It is unknown what the sludge wasting rate is without the process control information. The metal discharge weir on the clarifier is severely corroded. The concrete walls of the four cell sludge drying bed have large cracks; the walls of the structure also appear to have shifted off the concrete base. The dried sludge in the drying bed appeared to be extremely old. Vegetation was growing on the dried sludge. The walls of the chlorine contact chamber had a rim of small white grease bubbles. An estimated four foot deep layer of sludge was observed sitting

4

on the floor of the chlorine contact chamber.  The sludge layer was present in the final three legs of the chamber.  The layer depth was estimated using a tree limb found on the property.

4.)      Sludge was observed in Pine Bayou Canal at the outfall location.  Pine Bayou Canal, the receiving water, is a slow moving, calm body of water. The inspector walked upstream on the bank of the canal until the characteristic sludge evidence dissipated.  The inspector used a long stick to prod the canal bed next to the bank.  The inspector also walked downstream of the OTFL location until the same prodding procedure showed sludge dissipation downstream of the OTFL.  The sludge blanket at the OTFL is an estimated 20' x 10' span.

The Government first wishes to introduce evidence of the same tertiary treatment issues on the second chart it identified as supporting Count 3.  The Court, for the reasons stated above, has allowed some of those instances to be introduced into evidence and has disallowed others. With regard to this count, however, the Court finds that the relevance is minimal, and the danger of undue prejudice and confusion to the jury is high.  Accordingly, the Court will not allow the introduction of any additional instances from the second chart in support of the case against Defendants on Count 12.

However, the Government also seeks to introduce instances listed on the third chart where solids, sludge, sewage, or sewage debris either overflowed or were found in the receiving stream.  The Court finds that, given the similarity of the alleged violations at the other subdivisions and districts with regard to these instances, the Government may present evidence and testimony related to the August 5, 2008 instance at Branch Crossing Subdivision, the August 5, 2008 instance at Lakeside Liner, the August 5, 2008 instance at Valley Hill, and the August 7, 2008 instance at West Pines.  The introduction of this evidence is not unduly prejudicial to Defendants, nor is it substantially outweighed by the other Rule 403 concerns.

### E.      Conclusion

For the reasons set forth in the Court's January 12, 2011 Ruling and this Ruling,

Defendants' Motion in Limine is GRANTED IN PART and DENIED IN PART as set forth

above.  As previously expressed in conference, the Court will reconsider the introduction of

evidence with regard to particular instances based on developments in the testimony and

evidence.

MONROE, LOUISIANA, this _____ 14 _____ day of _____ January _____, 2011.


_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

6