UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIM. NO. 09-00112-01** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **J. JEFFREY PRUETT** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Bail Pending Appeal [Doc. No. 147] filed by Defendant J. Jeffrey Pruett ("Pruett"). The Government has filed an Opposition to Defendant's Motion for Bail Pending Appeal [Doc. No. 149]. Pruett has filed a Reply Memorandum in Support of Motion for Bail Pending Appeal [Doc. No. 150].

**I.   INTRODUCTION AND PROCEDURAL HISTORY**

Pruett is the President and Chief Executive Officer of Co-Defendant Louisiana Land and Water Co., Inc. ("LLWC") and the principal officer of Co-Defendant LWC, Inc. ("LWC"), Louisiana corporations which operated over thirty public water supply and wastewater facilities in the Western District of Louisiana.[1] Defendants' wastewater facilities provided residential wastewater services for a monthly fee to subdivisions in Ouachita and Morehouse Parishes.

Wastewater treatment facilities are subject to federal regulation under the Federal Water Pollution Control Act or Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq.* The CWA prohibits discharge of pollutants into the waters of the United States, except in accordance with a permit. 33 U.S.C. §§ 1311(a); 1319(c)(2)(A). The CWA also creates a joint federal and state permitting program

---

[1] LWC manages the day-to-day operations, while LLWC owns the assets.

for those who discharge pollutants into the waters of the United States.

In a 14-count Indictment, Pruett, LLWC, and LWC were charged with crimes under the CWA by knowingly violating a permit condition by failing to provide monitoring records required by state and federal law; knowingly violating a permit condition by failing to provide proper operation and maintenance to their facilities; knowingly discharging pollutants in excess of effluent limitations; and knowingly violating a condition of the permit for Fleetwood Park Subdivision by discharging raw sewage.

Trial was held on January 11-25, 2011. On January 25, 2011, the jury returned a verdict of guilty against Pruett of knowing violations of Counts 2, 5, 8, 11, 12, 13, and 15 and a negligent violation of Count 14.[2]

A sentencing hearing was held on June 8, 2011. On the record, the parties stipulated that there were thirteen days of violations related to Pruett's conviction on Count 13. The Court then took argument on Pruett's objections to the Pre-Sentence Report and under 18 U.S.C. § 3553(a). After due consideration, the Court granted in part and denied in part Pruett's objections to the Pre-Sentence Report and denied Pruett's request for a sentence below the advisory Guideline range. The Court sentenced Pruett to a term of imprisonment of 21 months on Counts 2, 5, 8, 11, 12, 13, and 15 (his felony convictions) and 12 months on Count 14 (his misdemeanor conviction), all to run concurrently. Pruett was ordered to report to the prison designated by the Bureau of Prisons on July 18, 2011, by

---

[2]Prior to commencement of trial, the Court issued an Order [Doc. No. 62] granting the Government's Motion to Dismiss Counts One, Seven, and Seventeen of the Indictment. The Indictment and verdict form were renumbered to avoid confusion to the jury and prejudice to Defendants. Thus, the count numbers on the jury verdict form do not match the count numbers in the original Indictment. *See* [Doc. No. 98]. In this Ruling, the Court refers to the counts as they are numbered in the original Indictment.

2:00 P.M., to begin serving his total term of imprisonment of 21 months.

On June 17, 2011, Pruett filed a timely notice of appeal. He filed a timely amended notice of appeal on June 29, 2011.

On July 1, 2011, Pruett filed a Motion for Bond Pending Appeal.

On July 12, 2011, the Government filed its opposition. The same day, Pruett filed a reply memorandum.

The Court is now prepared to rule on the pending motion.

II.  **LAW AND ANALYSIS**

A defendant has no constitutional right to bail after his conviction and sentencing. *See United States v. Bright*, 541 F.2d 471, 477 (5th Cir. 1976). The Bail Reform Act of 1984, 18 U.S.C. § 3143(b), establishes a presumption against the grant of such bail. Under § 3143(b)(1), a person who has been sentenced to a term of imprisonment "shall be detained" unless the judicial officer finds that the defendant has shown:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in:
>
>> (i) reversal,
>>
>> (ii) an order for a new trial,
>>
>> (iii) a sentence that does not include a term of imprisonment, or
>>
>> (iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

The Fifth Circuit has interpreted § 3143(b) to require the defendant to show four factors by

clear and convincing evidence: "(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Valera-Elizondo*, 761 F.2d 1020, 1025 (5th Cir. 1985) (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985); *United States v. Miller*, 753 F.2d 19, 24 (3d Cir. 1985); *see also United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987) (quoting same).

With regard to the third factor, a question is "substantial" if it raises a "substantial doubt (not merely a fair doubt) as to the outcome of its determination." *Valera-Elizondo*, 761 F.2d at 1024. "[I]t is a 'close' question, or one that very well could be decided the other way." *Id.* (internal quotation marks omitted) (quoting *Giancola*, 754 F.2d at 901). The "absence of controlling precedent is only one factor to be considered in the court's determination of whether a defendant's argument has a substantial chance of prevailing." *Id.* Even if there is no precedent in the Fifth Circuit, "'there may also be no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits.'" *Id.* (quoting *Giancola*, 754 F.2d at 901).

With regard to the fourth factor, the Fifth Circuit interprets § 3143(b)(1)(B) to require the defendant to show that, if the substantial question is determined in his favor on appeal, "that decision would likely result in reversal or an order for a new trial **on all counts for which imprisonment has been imposed**." *Id.* at 1025 (emphasis added) (citations omitted). "An argument that would produce a reversal of fewer than all . . . counts would be insufficient . . . because if one count imposing imprisonment survives, the reason for allowing bail pending appeal, that a defendant should not be

imprisoned under a legally erroneous sentence, disappears." *United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985).[3]

Pruett moves the Court to grant him bail pending appeal, contending that he is not a flight risk or danger to the community, that he has not appealed for purposes of delay, and that he has raised substantial questions of law. Specifically, Pruett contends that (1) the Government failed to show that he had the specific intent to violate the CWA with regard to his exceedance of the effluent limitations at Love Estates Subdivision (Count 13) and with regard to his recordkeeping violations (Counts 2, 5, 8, 11, 12 and 15); (2) the evidence was insufficient to sustain his felony convictions when he presented lay and expert testimony that full compliance with the permit conditions was impossible; and (3) the Court erred by instructing the jury to use the definition of ordinary negligence, rather than gross negligence, in determining whether Pruett committed misdemeanor violations of the CWA.

The Government has responded to Pruett's motion. Although the Government concedes that Pruett is not a flight risk or danger to the community, the Government contends that Pruett has a history of dilatory conduct with the EPA, the Louisiana Department of Environmental Quality ("LDEQ"), and in a related civil matter filed by the Louisiana Environmental Action Network ("LEAN") in this Court. The Government argues that Pruett's appeal is yet another dilatory tactic, contending that the Court should have "little confidence that [Pruett] will pursue his appeal and seek final resolution in a timely manner if he is released on bond." [Doc. No. 149, p. 4].

---

[3] After the Fifth Circuit's decision in *Valera-Elizondo*, Congress amended the Bail Reform Act. The amendment expanded the fourth factor to decisions that are likely to result in "a sentence that does not include a term of imprisonment, or . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B). However, the amendment does not abrogate the Fifth Court's interpretation of the terms "reversal or order for a new trial." The Court has considered all possibilities in evaluating Pruett's motion.

The Government also argues that Pruett has failed to demonstrate that there are substantial questions of law or fact. With regard to the recordkeeping violations, the Government argues that the language in the permits was not ambiguous and points to evidence that Pruett was advised, and was thus aware, of his obligations to maintain and produce records. Although Pruett presented evidence and argued at trial that he was unable to produce records because they had been provided to his attorney at LEAN's request in the civil lawsuit against him, the Government contends that the jury did not find this argument credible. Additionally, the Government points out that it presented evidence of other inspections where Pruett could not produce the records requested, but did not offer the LEAN lawsuit as an excuse.

With regard to the effluents limitations violations, the Government contends that the evidence was sufficient to sustain the felony conviction for Pruett's actions at Love Estates Subdivision. The Government points to the lab reports and Daily Monitoring Reports ("DMRs"), which showed that Pruett violated the effluent limitations on multiple occasions between September 2006 and August 2008. The Government points out that Pruett personally submitted the samples to the lab, picked up the samples, and recorded the results on the DMRs, so he was aware that Love Estates was exceeding effluent limitations. The jury also heard testimony from an EPA contract inspector about Pruett's unorthodox use of an old rail car as part of the wastewater treatment process. While the Government admits that Pruett and his expert offered explanations excusing his conduct, the Government contends that the jury rejected those explanations.

Finally, the Government contends that the Court properly instructed the jury on a negligent violation of the CWA using the ordinary negligence definition. The Government points out that only two circuit courts have addressed the standard for a negligent violation of the CWA. In both of those

cases, *United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999), and *United States v. Ortiz*, 427 F.3d 1278 (10th Cir. 2005), the circuit courts concluded that Congress did not intend to require a heightened showing of gross negligence for a CWA misdemeanor conviction. According to the Ninth and Tenth Circuits, a CWA misdemeanor conviction is properly sustained based on a showing of ordinary negligence.

In his reply memorandum, Pruett contends that the Government's memorandum serves only to reinforce Pruett's position that there is an "absence of controlling [CWA] cases." [Doc. No. 150, p. 1]. Although Pruett acknowledges the case law cited by the Government, he questions the continued validity of *Hanousek* and *Ortiz*, citing *United States v. Atlantic States Cast Iron & Pipe Co.*, Criminal No. 03–852 (MLC), 2007 WL 2282514, at *14 n.7 (D.N.J. Aug. 2, 2007). Pruett argues further that, under the Fifth Circuit's interpretation of § 3143(b), he does not have to show that he was wrongfully convicted or that the Court incorrectly rejected his Rule 29 arguments in order to obtain bail pending appeal. Rather, he has met his burden on the third factor by showing that there are substantial questions for appeal. Pruett has an interest in pursuing his appeal, and if he failed to pursue it diligently, the appeal would be dismissed by the Fifth Circuit, and he would no longer have a basis for release on bail.

Having considered the parties' arguments and the evidence presented at trial, the Court now turns to its own review of the factors under § 3143(b), as interpreted by the Fifth Circuit.

### A. Flight Risk/Danger to the Community

First, the Court finds that Pruett has shown by clear and convincing evidence that he is not a flight risk or danger to the community. During the pendency of these proceedings, since June 4, 2009, Pruett has been released on a $25,000.00 unsecured bond, without incident. Thus, Pruett has met his

burden on the first factor.

### B. Purpose of Delay

Second, contrary to the Government's arguments, the Court finds that Pruett has not filed an appeal for purposes of delay. While Pruett does have some history of delay in a related civil case, he has not engaged in dilatory tactics in this criminal proceeding, and, ultimately, the expediency of the appeal process is determined by the appellate court, not by Pruett. Given the numerous contested legal issues at trial and the dearth of case law interpreting the CWA, the Court is persuaded that Pruett has a legitimate basis for his appeal. Thus, Pruett has met his burden on the second factor.

### C. Substantial Question

Third, the Court must also consider whether Pruett has demonstrated that there are substantial questions for appeal.

#### 1. Felony Convictions

Although Pruett listed two separate questions for the Court's consideration, the questions are interrelated. Pruett has essentially argued that there is a dearth of CWA case law and that, as a result, it is unclear what evidence is sufficient to establish a defendant's *mens rea* for a knowing violation of the CWA. He argues further that there is a substantial question whether the evidence in this case was sufficient to sustain his felony CWA convictions.

Prior to and during trial, the Court and counsel all acknowledged the lack of instructive CWA case law. However, with regard to Pruett's felony convictions, the Court agrees with the Government that, under any standard, it presented sufficient evidence for the jury to find that Pruett knowingly violated his duty to maintain and provide records and his duty to comply with the effluent limitations. While Pruett's case was well presented by counsel, the jury rejected his evidence and arguments, and

the Court does not find that there is a close question for the Fifth Circuit to consider on appeal. Thus, Pruett has failed to meet his burden on the third factor with regard to questions about his felony convictions.

### 2. Misdemeanor Conviction

Pruett has raised a third question: whether the Court properly instructed the jury on the legal standard for negligent violations of the CWA. There is no controlling precedent in the Fifth Circuit addressing whether the ordinary or gross negligence standard applies in criminal CWA proceedings. At trial, the Court considered the same case law presented by the Government and Pruett in this motion, but ultimately concluded that the Government must prove only ordinary negligence to obtain a misdemeanor negligence conviction under the CWA. The Court then instructed the jury on ordinary negligence.[4]

However, the Court believes that the proper standard to be applied to a determination of

---

[4]The Court instructed the jury as follows:

F.  Criminal Negligence

As to each Count of the Indictment, you have been instructed that you must find that the Government proved beyond a reasonable doubt that the Defendant(s) acted knowingly. However, if you do not find beyond a reasonable doubt that the Defendant(s) knowingly violated the Clean Water Act, you may consider whether the Government has proven beyond a reasonable doubt that the Defendant(s) negligently violated the Clean Water Act. That is, you may consider whether the Defendant(s) committed the acts set forth in each Count negligently, in violation of 33 U.S.C. § 1319(c)(1)(A).

Negligence is the failure to use reasonable care. Reasonable care is that amount of care that a reasonably prudent person would use in similar circumstances. Negligence may consist of doing something which a reasonably prudent person would not do, or it may consist of failing to do something which a reasonably prudent person would do. A reasonably prudent person is not the exceptionally cautious or skillful individual, but a person of reasonable and ordinary carefulness.

[Doc. No. 94, pp. 18-19].

whether a defendant has committed a negligent violation of the CWA is a close question or one that could very well be decided the other way. Notably, as pointed out by Pruett, at least one district court has questioned the validity of the leading case, *Hanousek,* based on more recent Supreme Court case law. In *Atlantic States Cast Iron & Pipe*, the New Jersey District Court was considering a Rule 29 motion for post-verdict judgment of acquittal. In part, defendants challenged their conviction for a negligent violation of the CWA because the district court used the civil or ordinary negligence definition in the jury instructions, rather than the higher gross negligence standard found in Model Penal Code, Section 2.02(2)(d). In considering the Rule 29 motion, the district court stated:

> The statutory construction used by the *Hanousek* court was based on its conclusion that because the CWA uses the term "gross negligence" in another section containing civil penalties only [albeit enacted at a different time than the current version of 33 U.S.C. § 1319(c)(1)(A)], Congress must have meant not to use a Model Penal Code type of definition for the "negligent" criminal violation in Section 1319(c)(1)(A). This type of reasoning was explicitly rejected in a recent Supreme Court decision, *Safeco Ins. Co. v. Burr*, 127 S.Ct. 2201, 2210 (2007) ("The vocabulary of the criminal side of [the Fair Credit Reporting Act] is consequently beside the point in construing the civil side."). We believe there is good reason to scrutinize carefully that aspect of *Hanousek*, rather than accepting it as controlling.

2007 WL 2282514, at *14 n.7. Ultimately, though, after a very thorough analysis, the district court concluded that its jury instructions, including the negligence instruction, "clearly defin[ed] each mens rea requirement" and were, thus, "'sufficient.'" *Id.* at *47 (quoting *Hanouse*k, 176 F.3d at 1124).

In this case, the Court was initially inclined to instruct the jury on gross negligence until the Court's own close review of the CWA and the case law interpreting it. In the words of the Fifth Circuit, "[t]he language of the CWA is less than pellucid." *United States v. Ahmad*, 101 F.3d 386, 389 (5th Cir. 1996). However, after careful review, the Court agreed with the Government that the *Hanousek* court's analysis was persuasive and consistent with the statutory language of the CWA. Accordingly, the Court instructed the jury on the ordinary negligence definition.

While the Court is still persuaded that the jury was correctly instructed, Pruett, as he notes, does not have to prove the Court incorrect. It is enough that he has shown that there is a substantial question whether the jury was properly instructed. Given the lack of controlling precedent, the ensuing decision of the Supreme Court, and the Court's own struggle with this question, the Court finds that Pruett has met his burden on the third factor.

**D.     Result of a Favorable Resolution of the Substantial Question**

Having concluded that Pruett has raised a substantial question of law, the Court must address the fourth factor: whether a favorable resolution of that question would result in reversal or an order for a new trial on all counts for which a term of imprisonment has been imposed, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process. It is on this factor that Pruett fails to meet his burden.

The Court has found that Pruett has raised a substantial question with regard to the proper legal standard for negligent violations of the CWA. If on appeal, the Fifth Circuit determines that the proper legal standard for a negligence conviction under the CWA is gross, not ordinary, negligence, then Pruett would be entitled to a reversal and new trial on Count 14. However, Pruett has been sentenced to a term of imprisonment of 21 months on each of his felony convictions, to run concurrently, and a term of imprisonment of 12 months on his misdemeanor conviction, to run concurrently with the 21-month felony sentence. Thus, even if Pruett's misdemeanor conviction is reversed and a new trial ordered, he still must serve 21 months imprisonment on the basis of his felony convictions.

Applying § 3143(b), as interpreted by the Fifth Circuit, Pruett cannot show that he would

11

receive a new trial on all counts for which a term of imprisonment has been imposed. Likewise, Pruett, who has been on bond through this process, cannot show that a favorable resolution of the substantial question would likely result in a reduced sentence to time served plus the expected duration of the appeal process. Certainly, a reversal of Pruett's misdemeanor conviction would not result in a sentence with no term of imprisonment.

Although Pruett has made the novel argument that the Court's negligence instruction "tainted" Pruett's felony convictions, the Court disagrees. In order to convict Pruett of the felony CWA violations, the jury had to find that the Government proved beyond a reasonable doubt that Pruett knowingly violated the CWA. Assuming, as the Court must, that the jurors acted in accordance with their sworn individual duties, then the jury would not have determined that Pruett acted negligently, regardless of the definition.

Pruett has failed to rebut the presumption of detention at the fourth factor, and the Court cannot grant his motion for bail pending appeal.

### III.  CONCLUSION

Because Pruett has failed to rebut the presumption of detention under § 3143(b), his Motion for Bail Pending Appeal [Doc. No. 147] is DENIED. Pruett may file a motion for bail pending appeal with the United States Court of Appeals for the Fifth Circuit if he disagrees with this Court's decision.

MONROE, LOUISIANA, this 15th day of July, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE